Taft, J.
The books and pictures in evidence in the instant case clearly represent, and the undisputed evidence in the record indicates, that defendant knew at the time she is charged with having possessed them that they represented lewd and lascivious books and pictures. However, defendant contends that they were not “in [her] possession or under [her] control” within the meaning of the words of Section 2905.34, Revised Code.
Defendant offered evidence to prove that these books and pictures belonged to a man who had rented from her and occupied a room in her home; that, when she learned he was not going to return or use the room for the balance of the last month for which he had rented it, she decided to use the room for herself and to pack up his belongings and store them until he came for them; that, in doing so, she found these lewd and lascivious .books and pictures and packed them in a box and one of her suitcases with his other belongings with the purpose of storing them until he came for his belongings; and that she never looked at these books and pictures again before they were seized by the police.
In our opinion, this evidence of defendant establishes that she had these books and pictures “in * # # [her] possession or under * * * [her] control” within the meaning of those words as used in Section 2905.34, Revised Code.
Her evidence clearly discloses that defendant not only took possession and control of the room which she had rented but also of the belongings of her former tenant, including the books and pictures which the undisputed evidence shows that she knew to be lewd and lascivious.
Hence, it follows that, if the portion of Section 2905.34, Revised Code, that was applied in the instant case, is not unconstitutional and void, then, even if we assume that there were errors in the trial court’s charge as defendant argues, such errors could not have prejudiced defendant. It becomes neees *430 sary therefore to consider whether the constitutional questions raised require a reversal of the judgment under review.
Defendant contends that the due process clause of the 14th Amendment to the Constitution of the United States was violated by her conviction for possession and control of these books and pictures since that conviction was based primarily upon their unlawful seizure from her during an unlawful search of her home.
There is, in the record, considerable doubt as to whether there ever was any warrant for the search of defendant’s home. No warrant was offered in evidence, there was no testimony as to who issued any warrant or as to what any warrant contained, and the absence from evidence of any such warrant is not explained or otherwise accounted for in the record. There is nothing in the record tending to prove or from which an inference may be drawn, and no one has even suggested that any warrant that we may assume that there may have been described anything other than policy paraphernalia as things to be searched for. Our statute (Section 2933.24, Revised Code) requires a search warrant to “particularly describe the things to be searched for.” See also Section 2905.35, Revised Code. Our Constitution (Section 14 of Article I) specifically forbids the issuance of any such warrant except “upon probable cause, supported by oath or affirmation, particularly describing the place to be searched * * * and things to be seized.” Admittedly therefore there was no warrant authorizing a search of defendant’s home for any “lewd, or lascivious book * * * print, [or] picture.”
However, this court has held that evidence obtained by an unlawful search and seizure is admissible in a criminal prosecution. State v. Lindway, 131 Ohio St., 166, 2 N. E. (2d), 490 (appeal dismissed and certiorari denied, 299 U. S., 506, 81 L. Ed., 375, 57 S. Ct., 36); and the Supreme Court of the United States has held that the Constitution of the United States does not usually prevent a state court from so holding. Wolf v. Colorado, 338 U. S., 25, 93 L. Ed., 1782, 69 S. Ct., 1359, Stefanelli v. Minard, 342 U. S., 117, 96 L. Ed., 138, 72 S. Ct., 118. Subsequently, in Rochin v. California, 342 U. S., 165, 96 L. Ed., 183, *431 72 S. Ct., 205, 25 A. L. R. (2d), 1396, that court held that a conviction, obtained primarily by introducing in evidence narcotics seized not only during an illegal search but by means of a physical assault upon the defendant, violated the due process clause. Although there are statements in the majority opinion in that case which will support a reasonable argument that the conviction in the instant case should be set aside because the “methods” employed to obtain the books and pictures were such as to “offend ‘a sense of justice,’ ” later decisions have refused to follow that case in instances not involving the acquisition of incriminating evidence by the use of “ ‘brutal’ or ‘offensive’ ” physical force against the person of the defendant. Breithaupt v. Abram, Warden, 352 U. S., 432, 1 L. Ed., (2d), 448, 77 S. Ct., 408. See also Irvine v. California, 347 U. S., 128, 98 L. Ed., 561, 74 S. Ct., 381 (evidence obtained by use of microphone illegally placed in defendant’s home). Annotations 93 L. Ed., 1797, 96 L. Ed., 145, 98 L. Ed., 581, 100 L. Ed., 239, 50 A. L. R. (2d), 531. There is no evidence that any of the incriminating evidence in the instant case was taken from defendant’s person by the use of brutal or offensive physical force against defendant.
Hence, we conclude that, if the portion of Section 2905.34, Revised Code, applied in the instant case is valid, the due process clause of the 14th Amendment to the Constitution of the United States was not violated by defendant’s conviction, although that conviction was based primarily upon the introduction in evidence of books and pictures unlawfully seized during an unlawful search of defendant’s home.
The constitutionality of the regulation of obscene literature is considered in a recent annotation in 1 L. Ed. (2d), 2211. That annotation does not indicate that there is any ease decided by a court of last resort, and we can find none, considering the validity of a legislative prohibition against a mere knowing possession of lewd books and pictures. In most instances of legislation prohibiting possession of such articles, possession is prohibited, as it was under Section 2905.34, Revised Code (formerly Section 13035, General Code), prior to its amendment in 1939, where such possession is for the purpose of sale, *432 lending, giving away, exhibiting or publishing. Under our statute as now worded, mere possession is forbidden even where the possessor does not have a purpose of again looking at the books or pictures; and, in the instant case, the jury could have found the defendant guilty and she could have been (as she was) sentenced as a felon, even though it believed her evidence that she had innocently acquired possession of these articles, had no intention of ever looking at them again and was merely keeping them pending instructions for their disposition from their owner. Cf. Lambert v. California, 355 U. S., 225, 2 L. Ed. (2d), 228, 78 S. Ct., 240, Weems v. United States, 217 U. S., 349, 54 L. Ed., 793, 30 S. Ct., 544.
If, as defendant’s evidence discloses, defendant took possession and control of these books and pictures when she took possession of fhe room that had been occupied by her tenant and endeavored to pack up his things for him and, while doing that, necessarily learned of their lewd and lascivious character, then at that instant she had “in” her “possession” and “under” her “control” a “lewd or lascivious book * * * print [or] picture” as prohibited by this statute.
If such a legislative prohibition of possession of books and papers is valid, it may discourage law abiding people from even looking at books and pictures and thus interfere with the freedom of speech and press guaranteed by Articles I and XIY of the Amendments to the Constitution of the United States.
Smith v. California (1959), U. S., , 4 L. Ed. (2d), 205, 80 S. Ct., 215, held invalid a legislative provision that made it “unlawful for any person to have in his possession any obscene or indecent writing, [or] book * * * in any place of business where * * * books * * * are sold or kept for sale.”
In the court’s opinion by Mr. Justice Brennan it is said:
“We have held that obscene speech and writings are not protected by the constitutional guarantees of freedom of speech and the press. Roth v. United States, 354 U. S., 476, 1 L. Ed. (2d), 1498, 77 S. Ct., 1304. * * * our holding in Roth does not recognize any state power to restrict the dissemination of books which are not obscene; and we think this ordinance’s strict liability feature would tend seriously to have that effect, by *433 penalizing booksellers, even though they had not the slightest notice of the character of the books they sold. * * * if the bookseller is criminally liable without knowledge of the contents, and the ordinance fulfills its purpose, he will tend to restrict the books he sells to those he has inspected; and thus the state will have imposed a restriction upon the distribution of constitutionally protected as well as obscene literature. * * * the bookseller’s burden would become the public’s burden, for by restricting him the public’s access to reading matter would be restricted. If the contents of bookshops and periodical stands were restricted to material of which their proprietors had made an inspection, they might be depleted indeed. The bookseller’s limitation in the amount of reading material with which he could familiarize himself, and his timidity in the face' of his absolute criminal liability, thus would tend to restrict the public’s access to forms of the printed word which the state, could not constitutionally suppress directly. The bookseller’s self-censorship, compelled by the state, would be a censorship affecting the whole public, hardly less virulent for being privately administered. Through it, the distribution of all books, both obscene and not obscene, would be impeded.”
It may be argued that the legislation involved in the instant case, unlike that involved in the Smith case, requires scienter because it only makes it unlawful to “knowingly * * * have * * * possession.” However, this legislation is analogous in its effect to that in the Smith case. If anyone looks at a book and finds it lewd, he is forthwith, under this legislation, guilty of a serious crime, which niay involve a sentence to the penitentiary similar to the one given to this defendant. As a result, some who might otherwise read books that are not obscene may well be discouraged from doing so and their free circulation and use will be impeded; Cf. Benjamin v. City of Columbus, 167 Ohio St., 103, 146 N. E. (2d), 854, where no question of freedom of press involved.
In the opinion of Judges Taft, Bell, Herbert and Peck, the portion of Section 2905.34, Revised Code, upon which defendant’s conviction was based, is constitutionally invalid, and, for that reason, the judgment of the Court of Appeals should be *434 reversed. However, Section 2 of Article IY of the Constitution of Ohio reads in part:
“No law shall be held unconstitutional and void by the Supreme Court without the concurrence of at least all but one of the judges, except in the affirmance of the judgment of the Court of Appeals declaring a law unconstitutional and void.”
Since more than one of the judges of this court are of the opinion that no portion of the statute upon which defendant’s conviction was based is unconstitutional and void, the judgment of the Court of Appeals must be affirmed.

Judgment affirmed.

Zimmerman and Peck, JJ., concur.
Matthias, J., concurs in paragraphs two and three of the syllabus and in the judgment.
Weygandt, C. J., concurs in the judgment.
Bell and Herbert, JJ., concur in paragraphs one and three of the syllabus but dissent from paragraph two thereof and from the judgment.